HUGH MACRAE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 4284, 19271.   Promulgated November 29, 1927.

*Raymond N. Beebe, Esq.,* for the petitioner.
*T. M. Wilkins, Esq.,* for the respondent.

## OPINION.

SIEFKIN: Petitioner relies upon opinion evidence as to the general advantages accruing to the holder of the majority control of a utility and asks us to determine that the March 1, 1913, value of petitioner's 3,371 shares in the Tide Water Power Co. was at least 25 per cent more than $111 a share, the value determined by the respondent and the price at which small lots were sold by petitioner in 1912 and 1913. A witness who was well qualified to express an opinion testified that the controlling interest in a public utility was worth at least 25 per cent more per share than a minority interest. He based such opinion, not only upon the control of the majority over dividends, but also upon the fact that holding companies are the large purchasers of controlling interests in public utilities from which they derive not only the benefit of management, the benefit of naming the salaried officers, but also to designate who shall receive large fees for management under operating contracts. All of this may be admitted as a general proposition without, however, proving petitioner's contention. Petitioner uses a price of $111 a share as the fair market value of minority stock. The only evidence of this consists of two sales at that price of 10 shares each made by him late in 1912 and early in 1913. Petitioner's financial secretary

testified that she handled the transactions and that the buyers in each case were good friends of the Tide Water Power Co. One of them approached petitioner through a banker who named the price and petitioner "let him have it." These conditions do not justify us in using $111 as a fair market value of a minority interest. Without such a premise, petitioner has failed to sustain the burden of proving the March 1, 1913, value of the stock sold to be more than the amount determined by respondent.

On the question of the value of the Oleander Development Co. stock at the time it was received by petitioner in 1922, there is abundant evidence that there was no real market for the shares in that company at that time and that there was no real market for the real estate which constituted the assets of the company. Although there is some conflict in the evidence, it is also our opinion that the evidence establishes that the liquidation of the company would, in all probability, take a considerable number of years. Under these circumstances, we conclude that petitioner did not, by reason of his receipt of the stock in the Oleander Development Co., receive property with "a readily realizable market value" under section 202 (c) and (e) of the Revenue Act of 1921. The scattered sales of a few small lots to petitioner's secretary and the circumstances surrounding the only other two sales in the company's history are not indicative of the value contemplated by the statute. See *Phillips* v. *United States*, 12 Fed. (2d) 598, 603; *Appeal of A. L. Englander*, 1 B. T. A. 760; *Appeal of Samuel Graydon*, 2 B. T. A. 552; *Appeal of Anton M. Meyer*, 3 B. T. A. 1329.

The evidence as to the deduction for the debt owing petitioner from M. F. H. Gouverneur is that both petitioner and Gouverneur considered the debt a valid and existing one up until 1922 and in that year petitioner, finding Gouverneur ill with tuberculosis and disappointed in his expectations of obtaining considerable amounts of money from certain patents and without assets more than sufficient to support himself and family, determined the debt to be worthless and directed that the amount be charged off on his books, which was done. Subsequently petitioner released Gouverneur from the debt and Gouverneur gave petitioner a release as to any anticipated profits from certain business transactions of petitioner in which Gouverneur had an interest. It is argued by respondent that petitioner thus received a consideration for the cancellation of the indebtedness. This contention we deem answered by the evidence, which is uncontradicted, that the release by Gouverneur was given merely to clear the records and that it effected no other pur-

pose, a portion of the transaction in question having resulted in such a large loss that no hope of utimate profit remained.

Respondent also argues that the personal friendship of petitioner and Gouverneur implies that the cancellation of the debt was a gift. It seems to us that the other circumstances negative this implication and that the petitioner and Gouverneur treated the debt as a business transaction and that petitioner has satisfied the requirements of section 214 (a) (7) of the Revenue Act of 1921 in ascertaining the debt to be worthless and charging it off in the year 1922. The deduction should be allowed.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by LITTLETON, MORRIS, and MURDOCK.